[No. 3,375.]

## E. M. SKAGGS *v.* L. ELKUS.

PAYMENT OF MONTHLY RENT ON EXPIRATION OF LEASE FOR YEARS. If, on the expiration of a lease for a year or for years, with rent payable monthly, the tenant retains possession of the premises and pays the same rent each month, this does not in law create a new term for a year, without any agreement to that effect, but only creates a tenancy from month to month.

PRESUMPTION ARISING FROM PAYMENT OF RENT AFTER TERM EXPIRES. The payment of monthly rent, after the expiration of a lease for years with rent payable each month, is a mere fact in evidence from which an agreement for a further term may be presumed, but if the evidence tends to show that the tenant refused to accept a new term of a year, that fact tends to overthrow this presumption.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

The defendant took a written lease from the plaintiff on the 1st day of November, 1865, of the lower story of the El Dorado building, in Sacramento, at a monthly rent of two hundred dollars, payable monthly in advance. At the expiration of this lease the parties entered into another written lease of a similar character, which expired November 1st, 1869. There was some question about the understanding which the parties had at the expiration of the second lease, about the future occupation of the premises; but no other written lease was made. Appellant remained in possession, paying two hundred dollars rent every month in advance, until the last day of March, 1871, when he vacated the premises, having given respondent six weeks previous notice of his intention to vacate on that day, and having paid all the rent to the time he left. Plaintiff claimed that defendant was liable for the rent down to the completion of another year, viz: to the 1st of November, 1871. Defendant claimed that after the expiration of the second written lease he was, under the law, a tenant from month to month, and had the right to quit upon notice. This action is for the rent for April and May, 1871, the first two months of the disputed period.

On the trial the plaintiff testified that the defendant, about the 10th of October, 1869, told him there was no use in drawing up a new lease, and that he would occupy the store the same as he had done—the same without a lease as with one.

The defendant testified that when the lease expired, the plaintiff told him they had better renew the lease, and that he replied that so long as he remained in the retail manufacturing business he would occupy the store and pay the same rent as before, and that plaintiff said all right; and that he, the defendant, refused to make a new lease. The defendant also denied the conversation given by plaintiff, as having been held about October tenth.

When the defendant vacated the premises March 31st, 1871, he carried the key to the plaintiff's agent, who refused to receive it, claiming that the lease continued to November 1st, 1871, whereupon the defendant left the key in the agent's office. The premises remained vacant until November 1st, 1871.

The Court charged the jury as follows:

"First—When a tenant, under a lease for one year or more, holds over by continuing to occupy the leased premises and pays rent thereafter, and the rent is accepted by the landlord or by his authorized agent, such tenant becomes a tenant thereafter from year to year. The tenant under such circumstances is concluded by the mere holding over or continuing to occupy the leased premises, and the landlord is concluded after having accepted rent.

"Second—After a tenant under a lease for one or more years pays, and the landlord accepts or receives rent, another term is created by operation of law for one year, and from year to year thereafter until terminated in a legal manner on the same terms and provisions as to rent and other provisions as contained or existing in the lease previous to its termination. After such new term has been created, the landlord cannot terminate it till the end of the year without the consent of the tenant, and, on the other hand, the tenant cannot terminate it before the termination of the year without the consent of the landlord. It can only be terminated within the year by the consent of both parties."

The defendant excepted to the instructions.

The defendant asked the Court to give the jury the following instructions, which were refused, and defendant excepted to the refusal:

"First—If the jury believe from the evidence that the defendant held the premises under a written lease from

plaintiff for a term of two years, at the rent of two hundred dollars per month, payable monthly, which term and lease expired in November, 1869, and that at the end of said term defendant refused to and did not make a new lease for a year or more, although requested to do so by the plaintiff, then the holding over by defendant after that time was a tenancy from month to month, and defendant did not thereby become liable to keep and pay rent for said premises for the term of one year.

"Second—If the jury believe from the evidence that at the expiration of the two years' written lease the plaintiff and defendant had a conversation about the renewal of the tenancy for another year, but failed to come to any terms about it, and did not make any contract about it, and the defendant continued to occupy the premises and pay rent monthly, then no tenancy for any greater term than one month was created, and defendant had the right to terminate the tenancy by giving one month's notice.

"Fourth—The rule that a tenant holding over after the expiration of a written lease for one or more years is presumed to hold for another year, only applies to those cases where the parties silently acquiesce in its continuance by the payment and receipt of rent, but does not apply to cases where the parties have conversations and negotiations about the term of the future tenancy, and fail to agree.

"Fifth—If the jury believe in this case that the weight of evidence shows that at the end of the term of the written lease plaintiff wanted defendant to renew it for another year, and defendant refused to do so, then defendant did not become liable to retain said premises for a year.

"Sixth—If the jury believe from the evidence that the defendant, at the end of the term of the written lease, refused to make a new lease for a year or more, when asked to do so by plaintiff, then the holding by the defendant from

that time was a tenancy from month to month, and the jury should find for the defendant.

"Seventh—When the term of a lease is for two years, with the rent payable at a specified amount each month, and the tenant holds over beyond the term without any special agreement with the landlord respecting such holding over, it does not follow that such holding over necessarily creates a new term for a year. In the absence of any agreement respecting the time for which the tenant may hold over, the law creates a term by implication only for one of the shortest periods of which the original term was composed, so that in this case, if there was no express agreement between the parties as to the new term, the law would create a term of one month, and so on would create monthly terms so long as the tenant remained in the occupation of the leased premises."

The plaintiff had judgment, and the defendant appealed.

*Catlin & McFarland,* for Appellant.

Holding over and the receipt of rent extends the tenancy only for one of the shortest periods into which the original term was divided. If the original lease be for five years, with no shorter period than a year named, the new term raised by implication, is not for five years, but for one year; that being the unit or smallest period of which the original was composed. Now, in the lease in question, a month is the unit or shortest period of which the term was composed. It is essentially a letting by the month. It is true the words "two years" are used; but the construction should be the same as though "twenty-four months" had been used instead. The rent is made payable monthly, at two hundred dollars per month. (*Blumenberg* v. *Myers,* 32 Cal. 93; *Wilson* v. *Abbott,* 3 B. & C. 88; *Wilson* v. *Abbott,* 4 D. & R. 693; *Wilkinson* v. *Hall,* 3 Bing. N. C. 508.)

In *Coffin* v. *Lunt*, 2 Pick. 75, the Court say: "In the present case, the tenant held under the demandant without any special agreement as to * * * time or * * * rent; but it appears that * * * he was charged by the month. This must be considered as evidence of an understanding that he was to hold from month to month."

Again, the rule contended for by respondent only applies to those cases where the tenancy is continued by the silent acquiescence of the parties; not to cases where there are unsuccessful negotiations about the future conditions of the tenancy, and the lessee remains in possession pending a treaty for a further lease; or where the parties have tried but failed to agree about the terms.

The defendant's instructions express the law, and their refusal was clearly error. If the state of facts assumed in the instructions existed, or the jury were warranted by the testimony in so holding, then no tenancy existed except that created by the monthly payment and the receipt of rent, which was a monthly tenancy. (*Anderson* v. *Prindle*, 23 Wend. 615; *Doe* v. *Stennett*, 2 Espinasse, 717; Taylor's Land. and Tenant, Sec. 60.)

*Coffroth & Spaulding* and *McKune & Welty*, for Respondent.

Appellant became, after November 1st, 1870, liable to pay the rent for the year commencing November 1st, 1871. (Taylor's Landlord and Tenant, Secs. 22, 60; *Rowan* v. *Lytle*, 11 Wend. 620; *Averill* v. *Radcliff*, 15 John. 508; *Conway* v. *Starkweather*, 1 Denio, 113; Adams on Eject. 105.)

By the Court:

It was held here in *Blumenberg* v. *Myers*, 32 Cal. 93, that where a lessee for a term of years, rendering rent monthly, obtains from the landlord before the expiration of the term a receipt for one month's rent, commencing at the expira-

tion of the original term for years, he thereby becomes a tenant from month to month only.

There is no material distinction perceived between that case and the case at bar. In that case it is true that the lessee had sublet the premises for a portion of his original term, but it is not perceived that that fact did or could have influenced the decision of the case.

It is urged in argument that in that case the lessee had assigned to his sub-tenant the whole of his own term at the time he obtained the receipt for another month's rent. Had such been the fact it is not perceived that it could have been of any importance in the determination of the case. But such was not the fact. Blumenberg obtained the receipt for the extra month's rent on the 23d of March, 1864, and only assigned to Myers the remainder of his term for years on the fifteenth of April thereafter.

But even if the case of *Blumenberg* v. *Myers* were not decisive of this case, we think that the conversation of the parties, had after the expiration of the lease for years, and their disagreement as to the term during which the defendant was thereafter to remain, should have gone to the jury for the purpose of ascertaining how or for what term the tenant was thereafter to hold.

The implication of a new term created by the payment of rent after the expiration of the first term is an implication of fact merely. It is evidence from which an agreement for a new or further term may be inferred or presumed. If it be shown that, in point of fact, a new agreement was made, such new agreement would, of course, destroy the implication of a different term, which might otherwise be presumed from the subsequent payment of rent. So if, as here, the evidence offered on the part of the defendant went to show that he had expressly refused to accept a term of one year, that fact would tend to overthrow and destroy the mere presumption drawn from the subsequent payment of rent—that

he was to continue to hold thereafter for the space of one year.

Judgment and order reversed, and cause remanded for a new trial.